**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
Kevin Chan, Esq. (KC 0228)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Email: kchan@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | |
|---|---|
| JOHN GAUQUIE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CASE No.: |
| | CLASS ACTION |
| Plaintiff, | **<u>JURY TRIAL DEMANDED</u>** |
| vs. | |
| ALBANY MOLECULAR RESEARCH, INC., WILLIAM MARTH, and MICHAEL NOLAN, | |
| Defendants. | |

------------------------------------------------------------X

Plaintiff John Gauquie ('Plaintiff'), individually and on behalf of all other persons

similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the

following based upon personal knowledge as to himself and his own acts, and information and

belief as to all other matters, based upon, inter alia, the investigation conducted by and through

his attorneys, which included, among other things, a review of the Defendants' public

documents, United States Securities and Exchange Commission ('SEC') filings, and information

readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Albany Molecular Research, Inc. ('Albany Molecular Research' or the 'Company') between August 5, 2014 and November 5, 2014 (the 'Class Period'), inclusive, seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the 'Exchange Act').

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as the alleged misleading public filings and press releases entered this district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Plaintiff John Gauquie, as set forth in the accompanying certification, incorporated by reference herein, purchased Albany Molecular Research common stock at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Albany Molecular Research Corp. is a Delaware Corporation with headquarters in Albany, New York that provides integrated drug discovery, development, and manufacturing services primarily in the United States, Europe, and Asia. During the Class Period the Company's stock was traded on the NASDAQ Stock Market under the symbol 'AMRI.'

8.      Defendant William Marth ('Marth') has been, at all relevant times, the President and Chief Executive Officer of the Company.  He is also a Director of the Company.

9.      Defendant Michael Nolan ('Nolan') has been, at all relevant times, the Senior Vice President, Chief Financial Officer and Treasurer of the Company.

10.     Marth and Nolan are collectively referred to hereinafter as the 'Individual Defendants.'

**SUBSTANTIVE ALLEGATIONS**

11.     The class period starts on August 5, 2014 when the Company issued a press release and filed a Form 8-K with the SEC announcing its financial results for the second quarter of 2014 and updating its financial guidance for 2014. The press release stated, in relevant parts:

> **AMRI Announces Second Quarter 2014 Results**
>
> **Total Revenue of $68.2 million, including Contract Revenue of $61.5 Million, up 15%**
> **Adjusted Diluted EPS of $0.22, up 100%**
> ***Company Increases 2014 Adjusted EPS Guidance to $0.87 - $0.92 to Reflect Addition of OsoBio and Strengthening Contract Business***
>
> *****
>
> Highlights:

● Second quarter contract revenue of $61.5 million, up 21% from 2013
● Second quarter adjusted diluted EPS of $0.22 vs. $0.11 in 2013
● Expanded second quarter contract margins to 27% from 16% in 2013
● *Acquired Oso Biopharmaceuticals Manufacturing in July 2014, expanding contract manufacturing capabilities to include commercial scale, complex injectable drug product*

Updated Financial Guidance 2014:
● *Full year contract revenue guidance increased to between $275 and $283 million, an increase of 33% at the midpoint*
● Royalty revenue guidance of $25 million
● Adjusted EBITDA between $59 and $63 million, up 24% at the midpoint
● *Adjusted diluted EPS range between $0.87 and $0.92, compared to $0.70 in 2013, an increase of 28% at the midpoint, despite a $10 to $12 million decrease in estimated royalties from Allegra*
● Operating cash flow of $27 to $30 million

(emphasis added)

12.     In the same press release, Defendant Marth touted the acquisition of OsoBio in raising the financial guidance for 2014, stating in relevant parts:

> *Based on anticipated continued growth of our business and the recent addition of OsoBio, we are raising our outlook for 2014 with contract revenue growth of 33% and adjusted diluted EPS growth of 29% at the midpoint.*

(emphasis added)

13.     The statements referenced in ¶¶ 11-12 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and compliance policies, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/for failed to disclose that: (1) its OsoBio facility experienced a power interruption in July, 2014, which lead to the loss of finished product and required remediation of

one of its suites; (2) as a result of the foregoing, the Company's financial guidance was

materially false and misleading at all relevant times.

## The Truth Emerges

14.     On November 5, 2014, Company issued a press release and filed a Form 8-K with

the SEC revealing a business interruption at its OsoBio facility, which led to disappointing

financial results for the third quarter of 2014 and lowered its financial outlook for 2014. The

press release stated, in relevant parts:

> **AMRI Announces Third Quarter 2014 Results**
>
> **- Third quarter contract revenue of $57.5 million, up 8% from 2013**
> **- Lower Discovery and API revenue is offset by addition of OsoBio**
> - *OsoBio business interruption contributes to third quarter adjusted loss per share of $(0.02)*
> **- Full year 2014 contract revenue expected to be between $253 and $261 million, an increase of 22% at the**
> **midpoint**
> - *Full year adjusted diluted EPS range between $0.67 and $0.73, compared to $0.70 in 2013*
> **- Company provides initial 2015 outlook**
> **- Company creates new Drug Product reporting segment to reflect addition of OsoBio**
>
> *****
>
> **Financial Outlook**
>
> AMRI's estimates for the full year 2014 and 2015 are based on actual results for the first nine months of 2014 and management's expectations for the balance of 2014 and its outlook for 2015.
>
> AMRI estimates the following for full year 2014:
>
> - *Full year contract revenue is expected to be between $253 and $261 million, an increase of 22.4% at the midpoint*
> - Royalty revenue of $25 million remains unchanged
> - Adjusted EBITDA between $50 and $52 million, up 7% at the midpoint
> - *Adjusted diluted EPS is expected to be between $0.67 and $0.73, compared to $0.70 in 2013, based on an average fully diluted share count of approximately 32.6 million shares*

● Operating cash between $12 and $16 million and capital expenditures of approximately $16 million

(emphasis added)

15.     In the same press release, Defendant Marth expounded on the OsoBio business interruption, stating in relevant parts:

> ***The confluence of a business interruption event at our OsoBio facility, together with lower Discovery and API revenue has resulted in a weak third quarter.*** In our Discovery business, we saw lower fee-for-service work, while in our API business, timing of shipments impacted our results this quarter. ***Additionally, a weather-related power interruption at our OsoBio facility in Albuquerque took the facility offline for a period of time, contributing to the loss of finished product and the need to remediate one of the suites at the facility. Costs associated with this activity - together with facility downtime - increased our operating costs and contributed to the quarterly earnings loss.*** We have been working closely with our customers to not only provide a continued supply of product during this disruption, but have also taken steps to upgrade the facility to ensure we can supply our customers' growing needs longer term. ***We anticipate the affected suite at our Albuquerque facility to be back online in mid-November.***

(emphasis added)

16.     On that same day, the Company held an earnings conference call with securities analysts. During that call, Defendant Marth discussed the business interruption at the OsoBio facility in great detail, stating in relevant parts:

> Drug products, with regard to drug product let me briefly discuss the business disruption at OsoBio and the steps we have taken to get the affected manufacturing suite back online.
>
> ***In late July, the OsoBio facility experienced a power failure that caused a PLC malfunction that is a programmable logic controller.*** This allowed the doors to the aseptic core to remain open for a period of time. Backup power was available and after some remediation work the facility was brought back online and production resumed. In early September, data monitoring signaled environmental deviations in one of the primary filling suite, and we determined that it was triggered by the power interruption and subsequent conditions.
>
> ***To ensure safety of product, we made the decision to not distribute lots potentially impacted by this incident, and remediated the air handling system***

6

*taking the unit offline for a longer period of time.* This underutilized capacity contributed to drug products' higher cost in the third quarter. ***Work being done at the affected site is near complete and we expect the unit to be back up in mid-November.*** Despite the setback at OsoBio, we continue to see a strong book of business for drug product and the development pipeline continues to expand.

(emphasis added)

17.     During that same call, Defendant Marth attributed the disappointing results for the third quarter to 2014 partially to the business interruption at the OsoBio facility, stating in relevant parts:

**Bottom line, the third-quarter results fell short of our expectations and we attribute this shortfall to three factors.**

First, our DDS business was soft primarily due to continued weak revenue growth for discovery business, specifically US medicinal chemistry. Second, timing of API shipments to customers impacted both revenue and margins in the API business, and ***third, a power interruption at our OsoBio facility compromised the aseptic core, leading to the loss of finished products and the need for remediation work on one of the suites.***

(emphasis added)

18.     As a result of the adverse news, shares of Albany Molecular Research fell $6.08, or over 35%, to close at $16.59 per share on November 5, 2014 on unusually heavy volume, damaging investors.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Albany Molecular Research during the Class Period and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

20.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Albany Molecular Research's common stock was actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Albany Molecular Research or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

21.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

23.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether the misstatements and omissions alleged herein were made with scienter;

c.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Albany Molecular Research; and

d.      to what extent the members of the Class have sustained damages, and the

proper measure of damages.

24.      A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to redress

individually the wrongs done to them. There will be no difficulty in the management of this

action as a class action.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

25.      At all relevant times, the market for Albany Molecular Research common stock

was an efficient  market for the following reasons, among others:

a.      Albany Molecular Research's stock met the requirements for listing, and

was listed and actively traded on NASDAQ, a highly efficient and automated market;

b.      During the class period, on average, over hundreds of thousands of shares

of Albany Molecular Research stock were traded on a weekly basis, demonstrating a very

active and broad market for Albany Molecular Research and permitting a very strong

presumption of an efficient market;

c.      Albany Molecular Research regularly communicated with public investors

via established market communication mechanisms, including through regular

disseminations of press releases on the national circuits of major newswire services and

through other wide-ranging public disclosures, such as communications with the financial

press and other similar reporting services;

9

d.      Albany Molecular Research was followed by several securities analysts employed by a major brokerage firm who wrote reports that were distributed to the sales force and certain customers of his/her brokerage firm during the Class Period. Each of these reports was publicly available and entered the public marketplace;

d.      Numerous FINRA member firms were active market-makers in Albany Molecular Research stock at all times during the Class Period; and

e.      Unexpected material news about Albany Molecular Research was rapidly reflected and incorporated into the Company's stock price during the Class Period.

26.     As a result of the foregoing, the market for Albany Molecular Research's common stock promptly digested current information regarding Albany Molecular Research from all publicly available sources and reflected such information in Albany Molecular Research's stock price. Under these circumstances, all purchasers of Albany Molecular Research's common stock during the Class Period suffered similar injury through their purchase of Albany Molecular Research's common stock at artificially inflated prices, and a presumption of reliance applies.

**Applicability of Presumption of Reliance:**
**Affiliated Ute**

27.     Neither Plaintiff nor the Class need prove reliance – either individually or as a class because under the circumstances of this case, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court *in Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**FIRST CLAIM**
**Violation of Section 10(b) of**

**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

28.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

29.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Albany Molecular Research's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

30.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Albany Molecular Research's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

31.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Albany Molecular Research as specified herein.

32.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a

11

course of conduct as alleged herein in an effort to assure investors of Albany Molecular Research's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Albany Molecular Research and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Albany Molecular Research's securities during the Class Period.

33.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

34.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such

12

Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Albany Molecular Research's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

35.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Albany Molecular Research's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Albany Molecular Research's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Albany Molecular Research's securities during the Class Period at artificially high prices and were or will be damaged thereby.

36.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Albany Molecular Research's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Albany Molecular Research's

securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

37.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

38.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

39.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Albany Molecular Research within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been

misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

42.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

43.     As set forth above, Albany Molecular Research and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

44.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

45.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

d.      Such other and further relief as the Court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: November 12, 2014                              Respectfully submitted,


                                                      **THE ROSEN LAW FIRM, P.A.**


                                                      /s/ Phillip Kim
                                                      Laurence M. Rosen, Esq. (LR 5733)
                                                      Phillip Kim, Esq. (PK 9384)
                                                      Kevin Chan, Esq. (KC 0228)
                                                      275 Madison Ave, 34th Floor
                                                      New York, NY  10016
                                                      Phone: (212) 686-1060
                                                      Fax: (212) 202-3827

                                                      Counsel for Plaintiff