UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOHN GAUQUIE, individually and on
behalf of all others similarly situated,

                                                                 **MEMORANDUM AND ORDER**

              Plaintiff,                 Case No. 14 CV 6637 (FB) (SMG)

    -against-

ALBANY MOLECULAR RESEARCH,
INC., WILLIAM MARTH, and MICHAEL
NOLAN,

              Defendants.
------------------------------------------------------x

*Appearances:*
| For Plaintiffs: | For Defendants: |
|---|---|
| PHILLIP KIM, ESQ. | ADAM SLUTSKY, ESQ. |
| KEVIN KOON-PON CHAN, ESQ. | DEBORAH SINGER BIRNBACH, |
| LAURENCE MATTHEW ROSEN, ESQ. | ESQ. |
| Rosen Law Firm P.A. | KATHERINE G. MCKENNEY, ESQ. |
| 275 Madison Avenue | Goodwin Procter LLP |
| 34th floor | Exchange Place |
| New York, New York 10016 | Boston, Massachusetts 02109 |

**BLOCK, District Judge:**

      Ramesh Patel and Michael Lowery (collectively, "plaintiffs")[1] bring this putative class action against defendants Albany Molecular Research, Inc. ("AMRI"), William Marth, and Michael Nolan (collectively "defendants"), asserting violations

---

[1] The initial complaint was filed by John Gauquie; however, the amended complaint excludes mention of Gauquie and instead lists Patel and Lowery as plaintiffs. *See* ECF No. 17.

of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) plaintiffs' securities claims for failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737.[2] The motion is denied.

I

AMRI is a contract research manufacturing company that manufactures and produces injectables, compounds, and biologics for the pharmaceutical industry. Notably, in October 2013, AMRI resolved a three-year warning letter from the FDA, related to poor manufacturing practices and contamination found in drug products at AMRI's Burlington, MA facility. In the wake of that resolution, AMRI appointed Marth as President/CEO, and began an expansion project to target companies free from manufacturing issues to complement the already-existing AMRI facilities.

In 2014, AMRI acquired Oso Biopharmaceuticals Manufacturing, LLC ("OSO"), a laboratory in Albuquerque, New Mexico, because of its top-tier regulatory

---

[2] For purposes of this motion, the Court must take as true all of the allegations of the plaintiffs' complaint, and must draw all inferences in their favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013).

reputation and ability to expand operations. Unfortunately, in July 2014, OSO experienced a power failure, which resulted in the contamination of Suite 152, a section of the facility that accounted for 45-50% of OSO's sales. AMRI did not initially release information about the power failure, but instead extolled the value of the acquisition, as well as OSO's regulatory compliance reputation.

On November 5, 2014, AMRI announced disappointing results for the third quarter and lowered its fiscal 2014 guidance because of the July 2014 power failure, which forced AMRI to discard contaminated inventory.

## II

The Securities Exchange Act (the "Act") of 1934 makes it unlawful "to use or employ, in connection with the purchase or sale of any security. . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Additionally, under section 20(a) of the Act, individual executives acting as a "controlling person" of a company are also personally liable for their company's violations of the Act. *Id*. § 78t. A complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Federal Rule of Civil Procedure 9(b) by stating with particularity the circumstances constituting fraud. *See* 15 U.S.C. § 78u–4(b)(1).

Plaintiffs allege that AMRI falsely and misleadingly touted the added earnings and manufacturing capability of OSO and provided misleading financial guidance reports by failing to disclose a known power failure at OSO, which resulted in the contamination of 40-50% of its product and manufacturing delays. Specifically, the complaint points to defendants' positive outlook-driven statements during the August 5 conference call and press release, the August 11 10-Q form, and the September 30 reiteration of financial guidance, all of which are contradicted by a confidential witness employee's observation about the existence of a mold contamination in Suite 152 in August. The allegations in the complaint meet the "the primary purpose of Rule 9(b), [which] is to afford defendant[s] fair notice of the plaintiff's claim[s] and the factual ground upon which [they are] based." *Novak*, 216 F.3d at 314; *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

The PLSRA specifically requires a complaint to demonstrate that the defendant made "[m]isleading statements and omissions . . . of material fact," 15 U.S.C. § 78u-4(b)(1), and acted with the "[r]equired state of mind," *id.* § 78u-4(b)(2).

To plead falsity, the complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1)(B). The misrepresentation or omission of fact must be material.

On November 5, 2014, after AMRI's disclosures about the power outage, JPMorgan immediately issued a research note lowering its price target on AMRI and publicly questioned its failure to warn investors of the electric storm problems. Furthermore, in response to the announcement, the stock price dropped 35%. The information about the contamination at OSO was material. *See Reese v. Malone*, 747 F.3d 557, 570 (9th Cir. 2014) ("Facts demonstrating public interest in the withheld information support its materiality.").

The scienter requirement is met where the complaint alleges facts showing "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc.*, 493 F.3d at 99. Circumstantial evidence can support an inference of scienter in a variety of ways, including where defendants ". . . knew facts or had access to information suggesting that their public statements were not accurate; or failed to check information they had a duty to monitor." *Emp. Ret. Sys. Of Gov't of the Virgin Islands v. Blanford*, 794 F.3d at 306.

First, based on the complaint, it is reasonable to infer that Marth and Nolan were unaware of the power outage because OSO was part of the core operation, and alleged false statements concerning core operations contribute to an inference of scienter. *see Reese*, 747 F.3d at 575. AMRI expended significant resources–three-fourths of their cash capital–on the acquisition of OSO, as part of Marth's plan to

expand AMRI's market. OSO substantially contributed to the Burlington facility's ability to manufacture injectables from Phase I and II.

Moreover, Marth consistently asserted that AMRI was focused on acquisitions with facilities that had clean regulatory records–reflecting AMRI's contamination concerns. Actively communicating with the public about this issue demonstrates defendants' sensitivity to it. *Cf. Reese*, 747 F.3d at 557 (Court found it "absurd" to consider that the senior vice president did not have knowledge of information contradicting her statements when she took an active role in communicating with the press about the condition of the pipeline).

Additionally, plaintiffs have included statements from a confidential witness–described as a Process Validation Specialist employed from February 2002 to August 2014–who details AMRI's awareness of the mold problem prior to AMRI's allegedly material misstatements. A confidential witness may be probative of scienter where his accounts are "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Gentiva Securities Litigation*, 932 F.Supp.2d 352, 375 (2d Cir. 2013).

Finally, though not dispositive, the "magnitude of the alleged falsity," contributes to the inference of scienter. *Anderson v. Spirit Aerosystems Holdings, Inc.*,

–F.3d–, 2016 WL 3607032 (10th Cir. 2016) (losses, the equivalent of one quarter of the reported earnings, contributed to inference of scienter). Here, the complaint alleges that the contamination of OSO suite 152 impacted 40-50% of OSO's product sales, a sizable portion of AMRI's production.

Considering "all the allegations hollistically," *Tellabs*, 551 U.S. at 326, plaintiffs have demonstrated falsity, materiality, and scienter as to statements made by AMRI regarding productions at OSO.

Additionally, with respect to the section 20(a) claims, defendants contended that because plaintiffs failed to allege a securities fraud claim against AMRI, these claims should be dismissed as well. Since the Court has determined that plaintiffs' securities fraud claims do not warrant dismissal, the § 20(a) claim survives.

## II

Defendants' motion is denied.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
United States District Judge

Dated: Brooklyn, New York
July 26, 2016